UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NORBERT MEHL and BATSHEVA MEHL,

                           Plaintiffs,

      - against -

LSF9 MASTER PARTICIPATION TRUST, et al.,

                           Defendants.
-------------------------------------------------------------x

No. 25-CV-6226 (CS)

**ORDER**

Seibel, J.

The Court declines to sign the proposed Order to Show Cause submitted by Plaintiffs to the Clerk on June 29, 2026, (ECF No. 81; *see* ECF No. 82 ("Ps' Application")).  Plaintiffs seek an order enjoining Defendants, during the pendency of this proceeding, from evicting Plaintiffs pursuant to the writ of assistance issued by the Supreme Court of the County of Westchester.  *See* Order of Writ of Assistance, *U.S. Bank Trust, N.A. v. Mehl*, Index No. 68529/2016 (N.Y. Sup. Ct. Mar. 20, 2026), ECF No. 820.  In arguing that such relief is warranted, Plaintiffs take issue with various aspects of the foreclosure and subsequent auction process, as well as with the bankruptcy court's order granting relief from the automatic stay.  They argue that they were prevented from exercising their right of redemption prior to foreclosure; that the auction was somehow rigged; that the affirmation filed in support of the writ of assistance incorrectly stated that 153 MLS LLC purchased the property, whereas the property was purchased by TG Apts LLC and then transferred to 153 MLS LLC; and that the declaration submitted in support of the motion for relief from stay included several errors.  Regardless of the merits of any of these arguments, however, Plaintiffs' requested relief is barred, for several reasons.

First, Plaintiffs have not shown that any irreparable harm is imminent.  *See, e.g.*, *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (showing of imminent, actual irreparable harm essential to application for preliminary relief).  The alleged harm is not imminent because, as Plaintiffs acknowledge, 153 MLS LLC would be required to "initiate fresh state law eviction proceedings" after the Stay Relief Order becomes effective on approximately July 10, 2026.  (Ps' Application at 7; *see* ECF No. 83 ("Mehl Decl.") ¶ 19.)  And even if this were sufficiently imminent, Plaintiffs have not demonstrated irreparable harm.  Although Plaintiffs cite the loss of their primary residence as the potential irreparable harm, courts in this Circuit addressing similar claims have found that eviction from a primary residence does not constitute irreparable harm where the plaintiff has not shown that they faced a real threat of homelessness.  *See In re Buco*, No. 25-CV-5496, 2025 WL 2070767, at *2 (S.D.N.Y. July 23, 2025) (despite arguing that he would lose his primary residence, plaintiff did not show irreparable harm where he "d[id] not contend that the foreclosure sale w[ould] leave him without a place to live"); *Greer v. Mehiel*, No. 15-CV-6119, 2016 WL 828128, at *9 (S.D.N.Y. Feb. 24, 2016) ("To be sure, courts in this circuit have held that eviction can be an irreparable injury.  Yet in every such case the Court has found, the party facing eviction also faced the real threat of homelessness."); *see also Handl Cap. 531, LLC v. New Generation Holdings, LLC*, No. 25-CV-6318, 2026 WL 1759481, at *2 (E.D.N.Y. June 18, 2026) (rejecting argument that foreclosure would result in irreparable harm because it would "result in the loss of ownership and control of their home of nearly 50 years," as "displacement is the ubiquitous consequence of defaulting on a mortgage" and thus "[t]he Court is not (and should not be) concerned with sentimentality").  Plaintiffs lost their interest in the property over a year ago when the foreclosure sale took place, *see In re Harmony Holding Grp., LLC*, 655 B.R. 849, 856 (Bankr. E.D.N.Y. 2023) ("Courts have

2

repeatedly recognized that a debtor's interest in real property is extinguished by a foreclosure sale . . . ."), and they can hardly argue that they have been deprived of the opportunity to seek alternative living arrangements, *cf. In re Melton*, No. 11-CV-70984, 2011 WL 1600506, at *3 (Bankr. E.D.N.Y. Apr. 27, 2011) (finding irreparable harm where debtor would be forced "to find alternate housing within a short period of time").

Second, to the extent they attempt to attack the Bankruptcy Court's order lifting the automatic stay, a motion in this civil case is not the proper vehicle and would circumvent the relevant Rules of Bankruptcy Procedure.

Third, they have not shown that an injunction, as opposed to monetary damages, would be an appropriate remedy should they prevail on any of their claims.

Fourth, Plaintiffs already appealed the writ of assistance and sought a stay of the writ in state court, which the state court denied, *see U.S. Bank Trust, N.A. v. Mehl*, Index No. 68529/2016 (N.Y. Sup. Ct. Mar. 30, 2026), ECF No. 830, and granting Plaintiffs' application here would thus amount to inappropriate interference with state court proceedings, *see In re Lawtone-Bowles*, No. 25-CV-35655, 2026 WL 460627, at *5 (Bankr. S.D.N.Y. Feb. 17, 2026) (denying request to stay foreclosure pending appeal of foreclosure judgment where debtor had already sought a stay in state court and was denied that relief, as "judgments of foreclosure are fundamentally matters of state law" and "[t]he Second Circuit has repeatedly concluded that the federal district courts have no jurisdiction to review a state court foreclosure").

Fifth, the relief sought is barred by the *Rooker-Feldman* doctrine, as it would require me to hold that the state court erred in the underlying foreclosure action.  The state court entered a judgment of foreclosure and sale on May 1, 2023.  *See* Order Confirming Referee Report and Judgment of Foreclosure and Sale, *U.S. Bank Trust, N.A. v. Mehl*, Index No. 68529/2016 (N.Y.

Sup. Ct. May 1, 2023), ECF No. 605.  Under *Rooker-Feldman*, a claim is barred if the following four requirements are met:  "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."  *Sung Cho v. City of N.Y.*, 910 F.3d 639, 645 (2d Cir. 2018).  "[C]ourts in this Circuit have held consistently that efforts to upset a state court judgment of foreclosure are barred by the *Rooker-Feldman* doctrine."  *Winters v. State*, No. 24-CV-7420, 2026 WL 710123, at *9 (E.D.N.Y. Mar. 13, 2026).

While Plaintiffs' Amended Complaint asserts a variety of both federal and state law claims, the relief sought in the instant application – preventing Defendants from evicting Plaintiffs – clearly seeks to challenge the judgment of foreclosure and sale and reinstate Plaintiffs' rights to the subject property.  But the state court already held that foreclosure was appropriate long before Plaintiffs filed this action, and I am barred from contesting that determination.  *See Mackey v. United States, Dep't of Just.*, No. 16-CV-3865, 2017 WL 1424437, at *6 (E.D.N.Y. Jan. 30, 2017) (rejecting plaintiff's RICO, FDCPA, and fraud claims as "'inextricably intertwined' with the state court judgment and . . . therefore barred by *Rooker-Feldman*"), *report and recommendation adopted*, 2017 WL 1532696 (E.D.N.Y. Feb. 22, 2017).  This is true despite Plaintiffs' claims that the foreclosure was obtained by fraud.  *See Jones v. Rahman*, No. 25-CV-149, 2026 WL 1543173, at *7 (W.D.N.Y. June 2, 2026) ("*Rooker-Feldman* . . . bars the injunctive relief that [plaintiffs] requested, which amounts to an objection to the disposition of the foreclosure action in state court, even though [plaintiffs] suggest[] that the foreclosure judgment was obtained through a fraudulent scheme to steal [their] private property."); *Alterio v. Rushmore Loan Servs.*, No. 20-CV-143, 2020 WL 774350, at *3

4

(S.D.N.Y. Feb. 14, 2020) ("In the context of a challenge to a foreclosure proceeding, where a plaintiff asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars the claim.").   In other words, even if Plaintiffs prevailed in showing they were entitled to damages because the auction price was fraudulently deflated, they would not be entitled to continue to own or reside in the property; any such ruling would in effect be an overruling of the state court judgment of foreclosure and sale, which is precluded by *Rooker-Feldman*.

Nor does the fact that Plaintiffs are seeking a halt of eviction, rather than outright vacatur of the foreclosure, change the calculus, as the anticipated injury of which they complain (eviction) is nonetheless an "injur[y] caused by a state-court judgment." *Sung Cho*, 910 F.3d at 645; *see Decormier v. Picard*, No. 20-CV-547, 2020 WL 4464697, at *2 (D. Conn. May 19, 2020) ("[T]he injury that [plaintiff] faces is the foreclosure and related eviction.  That foreclosure and eviction is the result not of the actions of the defendants, but of the state court judgment against her.  Because the defendants could take no enforcement action related to the foreclosure were it not for the state court's Judgment, it is clear that the state-court Judgment is the source of [plaintiff]'s injury.").

I do not offer any opinion, at this stage, as to whether Defendants may ultimately be liable to Plaintiffs for the various forms of misconduct alleged in the Amended Complaint.  But because the only relief sought in the instant application requires rejecting the judgment of foreclosure, the application is denied. *See Dorce v. City of N.Y.*, 2 F.4th 82, 104 (2d Cir. 2021) ("[A]lthough plaintiffs may not seek to have a state court judgment voided, our court has concluded that *Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct that defendants pursued in obtaining state court judgments.").

**SO ORDERED.**

Dated: July 1, 2026
     White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

6